UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>v.<br><br>DAMIEN NORRIS,<br><br>                Defendant. | Case No.: 2:17-cr-00124-JAD-GWF<br><br>**ORDER**<br><br>**Re: Motion to Sever (ECF No. 175)** |

This matter is before the Court on Defendant Damien Norris's Motion to Sever Defendant's Trial from the Other Defendants (ECF No. 175), filed on August 15, 2018. The Government filed its Response (ECF NO. 178) on August 22, 2018. The Court conducted a hearing in this matter on September 13, 2018.

**BACKGROUND**

Defendant Damien Norris is charged, together with eleven other defendants in a superseding criminal indictment with conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(c), and 846. *Superseding Criminal Indictment* (ECF No. 36).[1] The indictment is a "bare-bones" indictment which alleges that beginning on a date unknown but prior to August 2016, and continuing up to and including April 2017, the named defendants, "together with others known and unknown, did knowingly and intentionally combine, conspire, confederate, and agree to distribute a controlled substances to wit: Oxycodone, a Schedule II controlled substance, in violation of [the foregoing statutes]." *Id.* at 2. The indictment does not describe the defendants' specific roles or levels of participation in the alleged conspiracy. Nor

---
[1] Two of the defendants have pled guilty.

1

does it set forth any overt acts allegedly committed by particular defendants in furtherance of the conspiracy.[2]

Defendant Norris has summarized the alleged facts of this case based on the information and evidence provided in discovery. According to Defendant Norris, Co-Defendant Earnest Rogers was identified by the DEA as a distributor of large quantities of Oxycodone. Agents verified through intercepted communications that Defendant Rogers had multiple individuals routinely contact him to sell prescription pills they obtained through a prescription or from other people. Allegedly, Defendant Rogers routinely sold the pills he obtained to Defendants Kary Watson and Marcus Pryor.[3] *Motion* (ECF No. 175), at 3.

Defendant further states:

> It is not alleged, nor is there any evidence that Defendant Damien Norris ever contacted or had any communication with Defendant Earnest Rogers or sold or purchased any Oxycodone pills to/from Defendant Rogers. It is also not alleged that Defendant Norris had any communication with, sold pills to or purchased any pills from any other co-defendant. The only co-Defendant that Defendant Norris allegedly had any contact with was Defendant Kary Watson. Kary Watson is a personal friend of Damien Norris.

*Motion* (ECF No. 175) at 3.

Defendant Norris asserts that he never assisted Defendant Watson or any other defendant in the sale of Oxycodone pills. *Id.* at 4. According to Defendant Norris's summary, a GPS ping of Defendant Watson's phone on December 9, 2016 resulted in it being located at an address that was identified as the primary residence of Defendant Norris. On January 27, 2017, law enforcement agents allegedly observed Defendant Watson arrive at Defendant Norris's residence, remove a small box from the trunk of his vehicle, and then walk into Defendant Norris's residence. *Id.* On February 6, 2017, law enforcement agents arrested a suspect, identified as CS-2, in Arizona who was in possession of 900 Oxycodone pills. CS-2 informed the agents that for approximately a

---

[2] Conspiracy under 21 U.S.C. § 846 does not require proof of an overt act. *United States v. Shabani*, 513 U.S. 10, 11, 115 S.Ct. 382, 383 (1994); *United States v. Jackson*, 167 F.3d 1280, 1285 (9th Cir. 1999).

[3] There is no Defendant Marcus Pryor named in the indictment. There is a Defendant Marcus Jones.

2

year he had been traveling to Las Vegas to purchase Oxycodone pills from an individual known as "Goldie." CS-2 identified a photograph of Defendant Norris as the person he knew as "Goldie." Law enforcement agents subsequently arranged to have CS-2 purchase 900 Oxycodone pills from Defendant Norris on February 23, 2017. Between April 4 and 5, 2017, agents searched Defendant Norris's residence and arrested him for conspiracy to distribute Oxycodone. *Id.* at 4-5.

Defendant Norris argues that he never committed any overt acts in furtherance of any alleged conspiracy. He never met with and does not know any of the Defendants, except Defendant Watson. He therefore argues that there is no nexus between his alleged sale of Oxycodone to CS-2 on February 23, 2017 and the conspiracy charged in the indictment. *Id.* at 6.

The Government states that the conspiracy charge against Defendant Norris "stems from defendant's association with co-defendant Kary Watson. Although there are twelve co-conspirators charged, defendant had contact only with one, Watson. Watson has had contact with several, but not all, of the other charged conspirators. Most of the con-conspirators [sic] are people who have access to oxycodone, usually by having a prescription. These individuals, and other similarly situated but uncharged, sell their prescribed oxycodone to co-conspirators such as Rogers and Watson. Rogers and Watson then resell oxycodone to distributors such as Norris, who intern [sic] distribute the oxycodone to their customers. Watson is not Norris' only source of oxycodone and occasionally, Norris may provide oxycodone to Watson." *Response* (ECF No. 178) at 1-2. The Government further states that "[p]hones used by both Norris and Watson were the targets of court-ordered interceptions of both calls and texts. Information obtained from these intercepts, physical surveillance of Norris, and corroborated statements of cooperators establish an agreement between Norris and Watson to distribute oxycodone." *Id.* at 2.

Defendant Norris argues that his trial should be severed from that of the co-defendants because he will be unfairly prejudiced in a joint trial by the introduction of evidence of a conspiracy between the other defendants. The Government argues that the evidence at trial will establish a series of transactions between Defendants Norris and Watson which were part of a

3

common plan to distribute Oxycodone, such that Defendant will not be prejudiced by the spillover effect of evidence introduced against other defendants.

**DISCUSSION**

Rule 8(b) of the Federal Rules of Criminal Procedure permits the joinder of defendants who have allegedly participated in the same act or transaction or the same series of acts or transactions constituting an offense or offenses. Codefendants jointly charged are, prima facie, to be jointly tried. *United States v. Mariscal,* 939 F.2d 884, 885 (9th Cir. 1991). This rule "should be construed broadly in favor of initial joinder." *United States v. Ford,* 632 F.2d 1354, 1373 (9th Cir. 1980), *cert. denied,* 450 U.S. 934 (1981). Joinder of charges against multiple defendants is particularly appropriate when the charges involve substantially overlapping evidence. *United States v. Vasquez–Velasco,* 15 F.3d 833, 844 (9th Cir. 1994). There is a strong preference for joint trials because separate trials would "impair both the efficiency and the fairness of the criminal justice system" by requiring the United States to "bring separate proceedings, presenting the same evidence again and again[.]" *Richardson v. Marsh,* 481 U.S. 200, 210, 107 S.Ct. 1702, 1708 (1987). A joint trial is also particularly appropriate where the co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the evidence would be admissible against each of them in separate trials. *United States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir. 2004).

Rule 14 provides relief from joinder if the defendant satisfies the "heavy burden" of showing that prejudice will result from joinder. *United States v. Sitton,* 968 F.2d 947, 961 (9th Cir. 1992). Because some prejudice results from any joinder, "if only 'some' prejudice is all that need be shown [for severance], few, if any, multiple defendant trials could be held." *United States v. Vaccaro,* 816 F.2d 443, 448 (9th Cir. 1987). "Defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro v. United States,* 506 U.S. 534, 540, 113 S.Ct. 933, 938 (1993). Severance should only be granted if there is a serious risk that a joint trial would either compromise a specific constitutional right of one of the defendants or prevent the jury from compartmentalizing the evidence as it relates to

4

individual defendants. Even where the risk of prejudice seems high, such risk can often be cured by "less drastic measures, such as limiting instructions[.]" *Id.*, 506 U.S. at 539, 113 S.Ct. at 938. *See also United States v. Escalante,* 637 F.2d 1197, 1201-02 (9th Cir. 1980).

The Ninth Circuit has developed a four-part test to aid the district court's determination of whether severance should be granted. These factors include: (1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether the defendants can show with some particularity, a risk that joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. *United States v. Hernandez–Orellana,* 539 F.3d 994, 1001 (9th Cir. 2008) (citing *United States v. Sullivan,* 522 F.3d 967, 981-82 (9th Cir. 2008)). The most important factors are whether the jury can compartmentalize the evidence against each defendant and the judge's diligence in providing evidentiary instructions to the jury. *Sullivan,* 522 F.3d at 981-82.

"In assessing the prejudice to a defendant from the 'spillover' of incriminating evidence, the primary consideration is whether 'the jury can reasonably be expected to compartmentalize the evidence as it relates to separate defendants in view of its volume and the limited admissibility of the evidence.'" *United States v. Cuozzo*, 962 F.2d 945, 950 (9th Cir. 1992) (citing *United States v. Escalante*, 637 F.2d at 1201). "A critical factor in this assessment is 'the judge's diligence---or lack thereof---in instructing the jury on the purposes to which various strands of evidence may be put.'" *Id.* (citing *United States v. Douglas* 780 F.2d 1472, 1479 (9th Cir. 1986)). *See also United States v. Vasquez-Velasco*, 15 F.3d at 846. A defendant seeking severance based on the "spillover" of evidence admitted against a co-defendant must demonstrate the insufficiency of limiting instructions given by the judge. *United States v. Nelson*, 137 F.3d 1094,1108 (1998). *See also United States v. Shields*, 673 Fed.Appx. 625, 628 (9th Cir. Dec. 21, 2016) (unpublished memorandum).

In order to establish a conspiracy under 21 U.S.C. § 846, the government must prove an agreement to accomplish an illegal objective and an intent to commit the underlying offense. *United States v. Iriarte-Ortega*, 113 F.3d 1022, 1024 (9th Cir. 1997). To establish the first prong, the government must prove that the defendant had knowledge of and participated in the conspiracy. An agreement may be shown by evidence of coordinated activity between the defendant and the alleged co-conspirators. *United States v. Mesa-Farias*, 53 F.3d 258, 260 (9th Cir. 1995) (citing *United States v. Hegwood*, 977 F.2d 492, 497 (9th Cir. 1992), *cert. denied*, 508 U.S. 913, 113 S.Ct. 2348 (1993)). Circumstantial evidence and the inferences to be drawn from that evidence can sustain a conspiracy conviction. Once the existence of a conspiracy is established, evidence establishing beyond a reasonable doubt even a slight connection of a defendant to the conspiracy is sufficient to convict the defendant of knowing participation. *United States v. Wright*, 215 F.3d 1020, 1028 (9th Cir. 2000). A conspirator may be held liable for a crime committed by another co-conspirator, provided that the acts making up the crime were reasonably foreseeable and were carried out in furtherance of the conspiracy, even though the conspirator did not participate in the actual commission. *Pinkerton v. United States*, 328 U.S. 640, 645-48, 66 S.Ct. 1180 (1946). An objective standard is used to determine foreseeability. *United States v. Montgomery*, 150 F.3d 983, 998-99 (9th Cir. 1998).

Even if Defendant Norris's trial is severed from that of the co-defendants, the Government will still be required to introduce evidence regarding the statements and conduct of some of the co-defendants, including Defendants Rogers and Watson, to prove the existence of the conspiracy to distribute Oxycodone. There is a dispute as to whether the Government can prove beyond a reasonable doubt that Defendant Norris had knowledge of the conspiracy and participated in it. Defendant Norris argues that the only things the Government can potentially prove is that (1) Defendant Watson's cell phone was electronically located in his residence on December 9, 2016, (2) Watson was observed entering Norris's residence with a box on January 27, 2017, and (3) Defendant Norris sold Oxycodone pills to CS-2 on February 23, 2017. The Government asserts, however, that information obtained from telephone call and text message

intercepts, physical surveillance of Norris, and corroborated statements of cooperators establish an agreement between Norris and Watson to distribute oxycodone.

It is not for the Court to determine on this pretrial motion whether the Government will be able to prove the existence of the conspiracy and of Defendant's knowledge and participation in it. Those are factual questions for determination by the jury at trial or on a motion for judgment of acquittal under Fed.R.Crim.P. 29(a).

In a joint trial, the Government will presumably present evidence regarding the statements and conduct of the other defendants that does not relate to Defendant Norris's alleged participation in the conspiracy. Defendant Norris has not demonstrated, however, that the jury will be unable to compartmentalize the evidence regarding (1) the knowledge and participation of other defendants in the alleged conspiracy and (2) Defendant Norris's knowledge of and participation in the conspiracy. Nor has he demonstrated that limiting jury instructions will be insufficient to guard against the potential prejudice from the spillover effect of evidence relating to other defendants. Accordingly,

**IT IS HEREBY ORDERED** that Motion to Sever Defendant's Trial from the Other Defendants (ECF No. 175) is **denied**.

DATED this 14th day of September, 2018.

_____
**GEORGE FOLEY, JR.**
**UNITED STATES MAGISTRATE JUDGE**